UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN JOSEPH BRUNO, JR.,

    Plaintiff,

v.

CASE No. 8:20-cv-14-TGW

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.
_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

### I.

The plaintiff, who was 60 years old at the time he was last insured for disability benefits and who has a college education (Tr. 115, 241),

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

has worked, among other things, as a sales representative (Tr. 242). He filed a claim for Social Security disability benefits, alleging that he became disabled due to "three heart attacks, lung problems, breathing problems, high blood pressure, hard[en]ing of arteries, depression, diabetes type 2, high blood sugar, tacicartia, hyper tension, anxiety, hyper lipodemia, short term memory loss, high cholesterol, heart palpitations, and cell disease" (Tr. 116, 127). The plaintiff filed his claim for disability with an alleged onset date of February 1, 2008 (Tr. 115). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, received a de novo hearing before an administrative law judge on February 2, 2019 (Tr. 56). After the hearing, the alleged onset date was amended to November 30, 2011 (Tr. 222).

The law judge found that the plaintiff had severe impairments of coronary artery disease, status post coronary artery bypass grafting x4 and stent, obesity, diabetes mellitus II, and hypertension (Tr. 27). The law judge concluded that with those impairments, the plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations (Tr. 30):

2

> [T]he claimant can lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk six hours per day, and sit six hours per day; the claimant cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs; the claimant can frequently stoop, kneel, crouch, or crawl, but must avoid concentrated exposure to unprotected heights, dangerous equipment, extreme cold, extreme heat, humidity, dust, chemicals, and fumes.

The law judge determined that with those limitations the plaintiff could perform past relevant work as a sales representative as generally performed in the national economy (Tr. 33). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 34).

The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner (Tr. 1).

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical,

3

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, furthermore, the plaintiff must show that he became disabled before his insured status expired on December 31, 2016. Tr. 25; 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the

4

witnesses. Grant v. Richardson, 445 F.2d 656, 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The relevant time period for this claim is the five-year period between November 30, 2011 (the alleged disability onset date) and December 31, 2016 (the last date the plaintiff was insured for disability benefits) (Tr. 25). Thus, the plaintiff must identify evidence compelling the law judge to find that he became disabled during this period.

The plaintiff raises three issues: (1) the law judge "improperly concluded that the Plaintiff's depression and anxiety were non-medically determinable impairments and improperly failed to perform a psychiatric review technique analysis"; (2) the law judge's decision is unsupported by substantial evidence because the law judge "did not reference the Plaintiff's vision impairment in her decision"; and (3) the Appeals Council erred because it did not acknowledge new evidence submitted to it concerning a 2019 medical opinion submitted after the law judge's decision (Doc. 15, p. 1). None of the arguments has merit. Moreover, in light of the Scheduling Order and Memorandum Requirements, any other challenges to the law judge's findings are forfeited (Doc. 14, p. 2).

A. The plaintiff's first issue is that the law judge did not consider properly the plaintiff's mental impairments because she did not perform a psychiatric review technique as required by Moore v. Barnhart, 405 F.3d 1208 (11th Cir. 2005).

Moore states that "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions." Moore v. Barnhart, supra, 405

F.3d at 1214. This technique requires evaluation on a five-point scale of how the claimant's mental impairment impacts four broad functional areas (also known as the paragraph B criteria): Understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. 404.1520a(c)(3)–(4). The law judge must incorporate the results of this technique into the findings and conclusions. 20 C.F.R. 404.1520a(e)(4). If the law judge finds "none" or "mild" degrees of limitation in the four broad areas, she will generally conclude that the mental impairment is not severe. 20 C.F.R. 404.1520a(d)(1).

The law judge stated the following regarding the plaintiff's depression and anxiety:

> I find no severe or medically determinable mental impairments. There is a mention of depression and anxiety in discharge diagnoses from 2010 (Exhibits 8F and 9F). However, these diagnoses predate the amended alleged onset date and the period at issue. There is no mental impairment mentioned again as a possible diagnosis until primary care notes from December 2016, which is only days before the date last insured (Exhibit 12F). As such, one could reasonably question whether a medically determinable mental impairment existed in the evidence during the period at issue.

7

> Regardless, even if a medically determinable impairment technically existed during the period at issue, it was certainly nonsevere as it does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities. The longitudinal treatment history further supports this finding. The claimant sought no specialized mental health treatment during the period at issue. Moreover, he rarely, if ever, complained of any symptoms of depression and anxiety (Exhibit 10F). Further, despite the lack of outpatient treatment, there is no evidence of emergency room visits or hospitalizations due to psychologically based symptoms.

(Tr. 29).

In making this finding of no severe mental impairment, the law judge stated that she "considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)" (Tr. 30). The law judge found that the plaintiff had "no limitation" in three of the four broad functional areas—understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace (Tr. 30). She found the plaintiff had a "mild limitation" in adapting or managing himself (Tr. 30).

8

The plaintiff argues that the law judge "bypassed" Moore's requirement to complete the Psychiatric Review Technique Form (PRTF) or analyze the four factors within the decision (Doc. 15, p. 7). The plaintiff's argument is clearly wrong. To the contrary, the law judge explicitly discussed the four broad functional areas in the decision and the plaintiff's degrees of limitation in each area (Tr. 30).

The plaintiff further argues that the law judge failed properly to consider mental impairment evidence from primary care physician Kristin D. Drynan, M.D. (Doc. 15, p. 8). The plaintiff saw Dr. Drynan on December 21, 2016, stating that he was depressed; Dr. Drynan diagnosed the plaintiff with "[m]oderate episode of recurrent major depressive disorder" (Tr. 1126). Notably, this is the only piece of objective medical evidence within the relevant time period that the plaintiff has identified that supports the alleged mental impairments.

The plaintiff cites treatment notes from Dr. Rosenberg from June 5, 2011, and May 18, 2012, as further evidence supporting the plaintiff's mental impairments (Doc. 15, p. 9). However, June 5, 2011 is before the alleged onset date of November 30, 2011, so treatment notes from that date cannot support the plaintiff's claim. Nor do the notes from May

9

18, 2012 provide support. The 2012 notes state "mood and affect are described as - **anhedonia not present** and **not depressed**" (Tr. 1055), so it is puzzling why the plaintiff would cite this evidence as support. Rather, this evidence appears to undermine the plaintiff's claim.

   The plaintiff avers that the law judge improperly substituted her own judgment for the judgment of medical experts in rejecting the mental health diagnoses as "non-medically determinable impairments" (Doc. 15, pp. 9–10). The plaintiff appears to have misread or misunderstood the law judge's reasoning. While the law judge doubted that the plaintiff had medically determinable mental impairments, she nonetheless went on to state that "even if a medically determinable impairment technically existed during the period at issue, it was certainly nonsevere" (Tr. 29). Thus, the plaintiff is incorrect to indicate that the law judge merely found no medically determinable mental impairments; rather, she found further that any mental impairments were non-severe.

  The law judge also considered the plaintiff's testimony and his wife's testimony, but she found that the plaintiff's statements about his symptoms were inconsistent with the medical and record evidence (Tr. 31). Further, the law judge assigned little weight to the wife's testimony "because of their

high degree of subjectivity, and their lack of medically acceptable standards" (Tr. 33).

As the Commissioner persuasively argues, the plaintiff "rarely, if ever, complained of any symptoms relating to either depression or anxiety during his primary care visits; rather, he often denied symptoms of depression and anxiety" (Doc. 16, p. 9). The record supports this assertion. Treatment notes from the relevant period show multiple negative findings of anxiety and depression (see, e.g., Tr. 1047, 1051, 1062, 1095).

In sum, the law judge properly assessed the four broad functional areas — in compliance with Moore — and the medical and other record evidence during the relevant period before finding no severe mental impairments. That finding is supported by substantial evidence.

B. The second issue the plaintiff raises is that the law judge failed to consider the plaintiff's vision impairment and its impact on the plaintiff's RFC.

Under the circumstances, the law judge reasonably concluded that the plaintiff did not have a viable claim of a vision impairment prior to his date last insured and therefore did not need to address such an impairment. Moreover, even if the law judge erred by not mentioning a

11

vision impairment, the error was harmless because, as plaintiff's counsel stated, there is no objective evidence of a vision impairment before the date last insured.

The law judge's residual functional capacity finding at step four of the five-step sequential evaluation process did not include a limitation for a vision impairment (see, supra, pp. 2–3; Tr. 30). The plaintiff argues that the law judge "failed to address or even reference the Plaintiff's eye impairment," citing a 2018 medical record from Brunel T. Gomez De Tavarez, M.D. as support (Doc. 15, p. 11). During this new patient visit on February 9, 2018, the plaintiff told Dr. Tavarez that he recently had an eye exam and was told he needed surgery on his right eye; Dr. Tavarez noted a secondary cataract (Tr. 1167, 1170). This, of course, was more than a year after the date last insured.

Importantly, in a Disability Report from March 2017, the plaintiff alleged no visual impairments that limited his ability to do work (see Tr. 240). Moreover, at the hearing in February 2019, the plaintiff's attorney conceded there were no objective medical findings regarding the plaintiff's eyesight prior to the date last insured (Tr. 63). The following was exchanged between the attorney and law judge:

12

> ATTY: Your Honor, he has problems with his eyesight and he did go to America's Best. That was in 2017 and probably around 2017, which is after the DLI. I did not see any issues with eyesight prior to DLI, but my client -- well, I'll let my client testify about that, but he does have -- did have issues with his eyesight prior to that....
>
> ALJ: But no -- we don't have any clinical objective evidence is what you're saying.
>
> ATTY: Not prior --
>
> ALJ: Before.
>
> ATTY: -- to the date last insured, Your Honor.

(Tr. 63). The law judge asked the plaintiff if he had pursued replacing his cataract, and the plaintiff indicated "no" (Tr. 74).

The plaintiff argues unpersuasively that, given Dr. Tavarez's assessment in 2018, "substantial evidence in the record supports a conclusion that the Plaintiff suffered from this impairment prior to his date last insured" (Doc. 15, pp. 11–12). As the plaintiff's counsel acknowledged, there is no objective evidence to support such a conclusion.

The plaintiff also states that the Florida Driver's License Bureau refused to issue him a driver's license, and that this suggests "a reasonable inference that this impairment existed prior to the date last

13

insured" (Doc. 15, p. 12). The denial of a driver's license occurred many months after the date last insured since the plaintiff did not move to Florida until September 2017 (Tr. 73). Moreover, the plaintiff, again, cannot support an inference of a vision impairment prior to the date last insured by objective evidence.

Notably, at the beginning of the hearing, the law judge said to plaintiff's counsel, "I want you to cite to some clinical objective evidence that supports an inability to do work" (Tr. 60). She subsequently told the plaintiff that "the rules state I can't pay your case, even if I totally believe you, unless I have a clinical objective evidence to support it" (Tr. 62).

Near the end of the hearing, the law judge had the following exchange with plaintiff's counsel (Tr. 106–07):

> ALJ: ...You indicated that you're waiting for two outstanding records. One of them is after -- is in 2017 that I don't really need. But the other one you said --
>
> ATTY: It's also 2017, Your Honor. It was an eye sight place and he went there in 2017.
>
> ALJ: What about America's Best? You said --
>
> ATTY: That's the eye sight place.
>
> ALJ: You said 2015.

ATTY: Oh, I was incorrect. My client --

ALJ: Only it's since. Okay. So I don't need to keep the record open then.

ATTY: Right, Your Honor.

ALJ: Okay.

Thus, the law judge, thinking that the plaintiff might have some clinical objective evidence of a vision impairment, asked plaintiff's counsel about the submission of such evidence. However, when informed that the vision evidence related to a period after the expiration of the insured status, the law judge said that there was no need to keep the record open for the submission of that evidence. Plaintiff's counsel agreed, thereby confirming what he had said earlier that there was no clinical objective evidence of a vision impairment.

In light of plaintiff's counsel's acknowledgment that there was no objective medical evidence of a vision impairment prior to the date last insured, the law judge could reasonably conclude that a discussion of a vision impairment was not warranted. That conclusion is supported further by the fact that the plaintiff in a Disability Report from March 2017 did not list a

vision impairment (Tr. 240). Under these circumstances, the law judge did not err by not mentioning a vision impairment.

Furthermore, even if a failure to mention a vision impairment was error, it was harmless. An error is harmless if it does not affect the law judge's ultimate determination. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in a Social Security appeal after finding that an administrative law judge made "erroneous statements of fact"). "[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." Miller v. Barnhart, 182 Fed. Appx. 959, 964 (11th Cir. 2006). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

The law judge's failure to consider a vision impairment was clearly harmless error, if error at all, in light of the absence of objective medical evidence of such an impairment. Thus, the law judge indicated she demands a showing of objective medical evidence before she will evaluate an impairment. That is reflected throughout the decision by her analysis of other impairments which focus on objective medical evidence. Without

16

such evidence it is implausible to think that the law judge would find a functional vision limitation. Therefore, even if the law judge had considered the plaintiff's allegation of a vision impairment, there would be no change in the plaintiff's residual functional capacity.

C. The third issue the plaintiff raises is that the Appeals Council failed to consider new, material, and chronologically relevant evidence that the plaintiff submitted after the hearing. This newly submitted evidence was a Medical Source Statement that the plaintiff's primary care physician, Dr. Drynan, completed in 2019 (see Tr. 12–14). Dr. Drynan opined that the plaintiff has limitations due to a mental impairment, and she diagnosed the plaintiff with depression and anxiety (Tr. 14).

The plaintiff asserts that the Appeals Council appears not to have considered the opinion because it was not listed in the exhibit list (Doc. 15, p. 15). The plaintiff argues that this was error because the Appeals Council must consider new, material and chronologically relevant evidence. Washington v. Social Security Administration Commissioner, 791 Fed. Appx. 871, 876 (11th Cir. 2019).

The Commissioner responds that "[t]he Appeals Council considered and exhibited the additional evidence submitted by Plaintiff—an April 2019 medical source statement from primary care physician Dr. Drynan—and determined the opinion did 'not provide a basis for changing' the ALJ's decision" (Doc. 16, p. 16) (citing the "Notice of Appeals Council Action" at Tr. 1, and a copy of the medical source statement at Tr. 12–14).

The plaintiff is correct in stating that the AC Exhibits List at the end of the "Notice of Appeals Council Action" does not list Dr. Drynan's medical source statement (see Tr. 4). However, the situation is somewhat confused because the evidence is contained in the administrative record (see Tr. 12–14). The confusion is clarified, however, by the plaintiff's statement that he "submitted into the claim file a medical source statement from[] Dr. Drynan" (Doc. 15, p. 14). The plaintiff adds, "The Appeals Council, however, did not appear to realize that this evidence was submitted as this evidence is not listed in its decision" (id.).

I agree that the Appeals Council did not realize that the new evidence had been submitted. However, there is good reason why it did not realize the evidence had been submitted. The plaintiff did not send the evidence to the Appeals Council contrary to the regulations, which provide

that "[y]ou should submit any evidence you wish to have considered by the Appeals Council with your request for review." 20 C.F.R. 404.968(a). Moreover, the request for review did not mention the new evidence (Tr. 201). Further, there was nothing else in the record that would call the Appeals Council's attention to the evidence.

In short, the plaintiff somehow stuck the doctor's statement in the claim file. He never pointed the Appeals Council to that statement. It is understandable that the Appeal's Council did not peruse the 1,205-page record to see if new evidence had been placed in it. Under those circumstances, the Appeals Council cannot be faulted for not considering the new evidence. Rather, the fault lies with the plaintiff.

It is appropriate to add that, if the Appeals Council had seen the statement, it would not have made any difference. The April 8, 2019, opinion was not chronologically relevant, so the Appeals Council was not required to consider it. The form asks, "Has the patient's condition existed since 11/30/2011?" (Tr. 14). Dr. Drynan left this blank. Thus, there is no indication that the evidence relates back to the plaintiff's insured period—November 30, 2011 to December 31, 2016.

For these reasons, the plaintiff's challenge to the Appeals Council's treatment of the newly submitted evidence is unavailing.

It is, therefore, upon consideration,

ORDERED:

That the decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 22nd day of March 2021.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE